**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAMES A. REPPERT,

                                        Plaintiff,                    1:19-cv-01518 (BKS/CFH)

v.

NEW YORK STATE DEPARTMENT OF STATE;
KISHA MARTINEZ SANTIAGO, Deputy Secretary of
State,

                                        Defendants.

**Appearances:**

*Plaintiff pro se:*
James A. Reppert
Albany, NY 12208-2212

*For Defendants:*
Letitia James
Attorney General of the State of New York
Andrew W. Koster
Assistant Attorney General, of Counsel
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

I.      **INTRODUCTION**

        Plaintiff James A. Reppert brings this action pro se against Defendants New York

Department of State ("DOS") and Kisha Martinez Santiago. (Dkt. No. 1). Plaintiff alleges that

Defendants failed to promote him, subjected him to unequal terms and conditions of employment

on the basis of his race or color, and retaliated against him in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e to 2000e-17. (*Id.* at 2).

Presently before the Court is Defendants' motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 16). Plaintiff opposes Defendants' motion. (Dkt. No. 18). For the following reasons, Defendants' motion is granted.

## II.    FACTS[1]

Plaintiff has been employed by the DOS for at least fourteen years. (Dkt. No. 18, at 6). Though he does not indicate his position, he has worked in various capacities at DOS, including "regulator" and as a "one-person 'special projects unit,'" and in a "supervisory position in the LWRP planning unit."[2] (*Id.*). Plaintiff does not identify his race.

Plaintiff's "exposure to harassment and what [he] eventually recognized as racist behavior began with [his] supervisor Stephen Ridler in about 2006." (*Id.*). "Harassment continued as a struggle with DOS to accommodate [Plaintiff's] chronic health disabilities." (*Id.*). With the help of his labor union, Plaintiff obtained an accommodation. (*Id.*). "Meanwhile [Plaintiff] was singled out to work as a one-person 'special projects unit'" and assigned to research "performance measures and strategic planning from 2007 to 2009, sidelined from all other LWRP duties." (*Id.*). In 2009, Plaintiff was "was able to change [his] lines of reporting" from the planning unit and work as a "regulator instead of a planner" in the LWRP program. (*Id.*). In 2013, Plaintiff—who was the "senior of four staff"—was promoted to "CRS II, a supervisory position in the LWRP planning unit." (*Id.*). This "placed [Plaintiff] back in the

---

[1] The facts are taken from Plaintiff's Complaint and response to Defendants' motion to dismiss, (Dkt. Nos. 1, 18), which he asserts is a "Proposed First Amended Complaint." (Dkt. No. 18, at 1). *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[2] There is no indication in Plaintiff's submissions what "LWRP" stands for or whether he has always worked in the LWRP planning unit.

reporting line with Mr. Ridler heading the unit, who commenced to continue with harassment." (*Id.*).

Plaintiff "fil[ed] an oral and written complaint" with DOS's "Affirmative Action Officer."[3] (*Id.* at 5). "[A] 2017 [DOS] Affirmative Action Officer investigation found that discriminatory acts did occur." (*Id.* at 3). The DOS "acted to discipline the perpetrator, who retired."[4] (*Id.*). However, "in so doing . . . they had to demote him from a provisional Program manager position to his last permanent assignment." (*Id.*). Thereafter, the Deputy Secretary of State "resigned her position after [Plaintiff] complained of retaliation during [a] staff meeting." (*Id.*). Shortly after that, "the Office Director, who had been brought in by the Deputy Secretary of State, resigned." (*Id.*). "This left the office with no leadership." (*Id.*). Plaintiff worked "with DOS counsel's office in preparation for a scheduled arbitration hearing for Mr. Ridler on May 23, 2017." (*Id.* at 7). Since then, Plaintiff has endured "acts of retaliation," which continue to date, including "career blocking, marginalization, and failure to promote," much of which he attributes to Defendant Kisha Santiago, with whom Plaintiff later competed for, and to whom Plaintiff lost, the Deputy Secretary of State position. (*Id.*).

On June 20, 2017, Plaintiff met with "Brendan [Fitzgerald] and Jim Leary," "to discuss a potential leadership role" he believed he was "uniquely prepared to provide for the office," and "expressed interest in assuming the vacant Deputy Secretary of State position or Program Manager for the LWRP unit." (*Id.* at 8). Plaintiff's "request" for the Deputy Secretary of State

---

[3] Plaintiff asserts he also "filed two cases before the NYS Division for Human Rights [and] the US EEOC," and that his complaints resulted "in the finding of racial discrimination by the [DOS's] own internal Office of Affirmative Action investigation, the US District Court for the Northern District of New York, and a Notice of Intent to file a Claim with the NYS Attorney General." (Dkt. No. 18, at 7). The Court takes judicial notice of the fact that there does not appear to be a case, other than the present action, filed by James Reppert in the Northern District of New York.

[4] Although Plaintiff's submissions do not specifically identify the "perpetrator," the Court infers from Plaintiff's other allegations that it is Ridler. The Court similarly infers that the discrimination found to have occurred was racial discrimination. To the extent Plaintiff files an amended complaint he should clarify these issues.

position "was a protected activity," and he sought the position as "as a remedy for [his] original complaint[,]" and "to restore [his] reputation." (*Id.* at 8). However, "DOS filled the upper vacancies with attractive-looking, younger, but less-experienced people." (*Id.* at 3). On August 10, 2017, "Executive Chamber appointed Kisha Santiago, who was "in her thirties," (*id.* at 3), to the Deputy Secretary of State position. (*Id.* at 8). Defendant Santiago "was aware" of the "open . . . position and . . . had knowledge of the circumstances" surrounding the vacant position—i.e., Plaintiff's "prior complaints of racial discrimination and retaliation." (*Id.* at 3, 9). Santiago knows that "she is in a leadership position . . . as a direct result" of Plaintiff's prior complaints. (*Id.* at 3).

Following Santiago's appointment, Fitzgerald "advised [Plaintiff] to work with [] Santiago regarding the Program Manager position," but this "proved nearly impossible," and he was not able to meet with her until December 12, 2017. (*Id.* at 8). At the meeting, Santiago was "antagonistic," and though Plaintiff left his resume, he "did not get a chance to discuss it, nor even broach the topic of [sic] Program Manager position." (*Id.* at 9). At the meeting, Plaintiff "felt harassed by [Santiago's] aggressive tact [sic]" and her "barrage of 'What does that mean' questioning." (*Id.*). "[A]fter about twenty minutes of harrowing banter," Plaintiff told Santiago that he "had interviewed for her position" and "the meeting abruptly ended." (*Id.*).

Since Santiago's assumption of the Deputy Secretary of State position, Plaintiff has "been subjected to retaliatory acts" and continues "to be punished by management." (*Id.*). For example,[5] (i) in or about 2017, he was not assigned the "second phase of Project Seneca," which "substantially reduced the importance and dollar amount of projects [he] manage[s]," (*id.* at 9–10), (ii) Sarah Crowell, who appears to have a supervisory position in the LWRP unit, "took over

---

[5] Plaintiff does not provide dates for the majority of these alleged retaliatory acts.

supervisory control" of the drafting of "a new LWRP Monitoring guidance"—a project Plaintiff

had agreed to supervise—and asked Plaintiff "not to interfere," (*id.* at 10), (iii) Santiago has

"minimize[d Plaintiff's] ability to participate in, assist, or influence outcomes of program-

defining issues or opportunities" and "subvert[ed] any influence [Plaintiff] might have,"

revealing Santiago's "biased attitudes" towards Plaintiff, (*id.* at 11), (iv) Santiago did not

"allow[]" Plaintiff "to attend a Smart Growth" event in Oswego, even though he had been

invited, and "went by herself," (*id.* at 11–12), (v) Santiago told Plaintiff to "put a pin in it," in

response to a suggestion he made at a staff meeting, meaning that "the topic is a live hand

grenade for which [Plaintiff] should replace the pin to avoid a dangerous situation," (*id.* at 12),

(vi) at other staff meetings, Santiago "flatly contradicted" Plaintiff, "chilling" the discussion and

showing "staff that . . . Santiago disagrees with [Plaintiff] on a basic premise of the LWRP

program," (*id.* at 13), (vii) Santiago "chastised" Plaintiff, and at one point, "singled out" Plaintiff

"with a non-planning-profession task," (*id.* at 14–15), and (viii) Plaintiff "was not offered" "the

vacant window cubicle" despite his position and seniority, (*id.* at 15). In addition, a staff member

with whom Plaintiff formerly had a collegial relationship, "has refused to acknowledge

[Plaintiff's] presence for many months," avoids eye contact, "walking far around [Plaintiff's]

cubicle," and "never speaking a single word" to Plaintiff. (*Id.* at 16–17). This appears to Plaintiff

"to be a reaction based on [Plaintiff's] taking a stance against racism." (*Id.*).

Plaintiff interviewed with Santiago and Crowell for an "SG 25 position," (*id.* at 11), and

on May 14, 2018, Plaintiff learned "in front of a convocation of all available staff" that Stephanie

Wojtowicz was receiving a promotion to SG 25 and that he "did not get the SG 25 promotion." [6]

(*Id.* at 16). Santiago and Crowell "allowed Wojtowicz to lead the LWRP unit" before the

---

[6] SG appears to stand for "salary grade." (*See, e.g.*, Dkt. No. 1, at 7).

promotion, despite her lack of experience, demonstrating their "bias towards selecting" her for the position. (*Id.* at 18).

At a May 18, 2018, review committee meeting, Santiago "repeatedly questioned" Plaintiff's observations. (*Id.* at 13). Santiago placed a May 24, 2018, staff meeting for which Plaintiff had "propose[d] content" on hold. (*Id.* at 15). The meeting, however, ultimately went forward on May 24, even though Plaintiff was "out of the office," and Wojtowicz assigned tasks based on Plaintiff's input and ideas, which ensured "all staff" reported to her, "though she was the same rank" as Plaintiff and had not discussed this with him. (*Id.* at 18–19).

On May 21, 2018, Plaintiff was assigned to "work on a special project" that was "unrelated to professional planning, environmental planning, . . . or landscape architecture," and limited Plaintiff to assigning "a minor task" of no "import" to the "LWRP program." (*Id.* at 17). Santiago sent an email to "high-ranking staff" questioning a spreadsheet entry Plaintiff made concerning a May 30, 2018 event, which Plaintiff believed communicated a "no confidence message" to office leadership. (*Id.*).

"Seeking relief," for alleged racial discrimination, Plaintiff "explored and exhausted all administrative routes such as direct discussions with [DOS] management" and sending an August 30, 2018 letter "to NYS S[ecretary] O[f] S[tate] Rossana Rosado and Alphonso B. David, Counsel to the Governor." (*Id.* at 7).

Plaintiff asserts he raised the issue of "discrimination in pre-determining promotions" in "the Plaintiff's reply to DOS counsel's letter dated April 25, 2018, as part of the EEOC charge," which he filed on February 22, 2019. (Dkt. No. 1, at 6). The EEOC mailed Plaintiff a right to sue letter on September 6, 2019. (*Id.* at 8). Plaintiff filed this action on December 9, 2019. (*Id.* at 1). On February 10, 2020, Plaintiff filed with the New York Attorney General a "notice of intent to

file a claim of tort" against DOS for "negligent exposure to racial [sic] discriminatory acts."
(Dkt. No. 18, at 7).

## III.    STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim
to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d
129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The
plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative
level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual
allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See
E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014). However, "the tenet that
a court must accept as true all of the allegations contained in a complaint is inapplicable to legal
conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that has been filed pro se
"must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims
that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*,
657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim
for relief." *Id.*

## IV.    DISCUSSION

Defendants argue that the entire Complaint must be dismissed because it "fails to include
any factual allegations which could satisfy the pleading requirement." (Dkt. No. 16, at 3).
Defendants also assert that Santiago must be dismissed because individuals are not subject to
liability under Title VII. (*Id.*).[7] The Court agrees.

---

[7] Defendants argue that "[t]he vague nature of the Complaint makes it impossible for the Defendants to determine
whether the statute of limitations bars all or part of [Plaintiff's] claims. They therefore reserve the right to raise the
statute of limitations defense later, if necessary." (Dkt. No. 16-1, at 5 n.2). Accordingly, the Court does not consider
whether Plaintiff's claims are time-barred.

A.      Discrimination

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A race discrimination claim under Title VII "is subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). As this motion is one to dismiss, however, the Court "focus[es] only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation." *Id.*

To defeat a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). The plaintiff may meet the burden of showing a motivating factor "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* A complaint is sufficient "if it pleads specific facts that support a minimal plausible inference of such discrimination." *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016).

Here, Plaintiff fails to state a claim under Title VII. He alleges Defendants discriminated against him based on race, (Dkt. No. 18, at 3), but has not identified himself as a member of a protected class based on race, nor provided any facts that would support a plausible inference that Defendants discriminated against him based on his race.[8] *See McClarence v. Int'l Union of*

---

[8] Although Plaintiff alleges that DOS "filled the upper vacancies with . . . younger, but less experienced people," and that he has a disability for which he has obtained a reasonable accommodation, (Dkt. No. 18, at 3), Title VII does not

*Operating Eng'rs Local Union*, No. 16-cv-6614, 2017 WL 3887883, at *2, 2017 U.S. Dist. LEXIS 143479, at *4–5 (E.D.N.Y. Sept. 5, 2017) (dismissing complaint where the plaintiff "asserted a bare-bones claim that he was discriminated against on the basis of race or color, but has not identified himself as a member of a protected class based on race, nor presented any facts indicating that he was discriminated against on the basis of his membership in a protected class"); *Arroyo-Horne v. New York City Police Dep't*, No. 16-CV-03857, 2016 WL 8711061, at *7, 2016 U.S. Dist. LEXIS 171491, at *16 (E.D.N.Y. Dec. 9, 2016) ("A plaintiff's failure to allege her race, color or national origin fails to state a Title VII claim."); *see also Evans v. Golub Corp.*, No. 96-cv-3889, 1997 WL 349952, at *2, 1997 U.S. Dist. LEXIS 8853, at *5 (S.D.N.Y. June 24, 1997) (dismissing pro se plaintiff's Title VII claim, noting that although the "plaintiff checked off boxes on the form complaint for both race and color discrimination," "he failed to explain how those categories were applicable, and he did not even identify his race and color.").[9]

Even assuming the Complaint plausibly alleges an adverse action—that Defendants failed to promote Plaintiff, (*see, e.g.*, Dkt. No. 1, at 6 (asserting that Plaintiff presented a resume but "DOS filled the upper vacancies with attractive-looking, younger, but less-experienced people")); *see also Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) (observing failure to promote is an adverse action)—it fails to allege facts from which discriminatory intent could be inferred.

---

prohibit age or disability discrimination. *Bornholdt v. Brady*, 869 F.2d 57, 62 (2d Cir. 1989) ("Title VII plainly does not apply, since that statute governs complaints relating only to discrimination on the basis of race, color, religion, sex, or national origin, and not discrimination on the basis of age."); *Risco v. McHugh*, 868 F. Supp. 2d 75, 107 (S.D.N.Y. 2012) ("Title VII does not prohibit discrimination on the basis of disability."). Moreover, these conclusory allegations are insufficient to state a claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, or the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

[9] The Court has provided a copy of the unpublished decisions to the pro se Plaintiff.

"Because discrimination claims implicate an employer's usually unstated intent and state of mind, rarely is there 'direct, smoking gun, evidence of discrimination.'" *Vega*, 801 F.3d at 86 (internal citations omitted) (quoting *Richards v. N.Y.C. Bd. of Educ.*, 668 F. Supp. 259, 265 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 1288 (2d Cir. 1988)). "[A]t the initial stage of a litigation," therefore, "the plaintiff's burden is 'minimal'—he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Id.* at 86–87 (quoting *Littlejohn*, 795 F.3d at 311).

Plaintiff alleges that "racist behavior began" with his "supervisor Stephen Ridler in about 2006" and "[h]arassment continued" during his employment. (Dkt. No. 18, at 6). He further alleges that "[r]ecent events have provided evidence of discrimination in pre-determining promotions," *(id.* at 3), and that DOS used "differing candidate selection standards to disfavor his candidacy." (*Id.*). These allegations, however, lack specificity and are conclusory; thus, they allow no inference of discriminatory intent. Conclusory allegations of "racist behavior," without any supporting facts, are not sufficient; the Court must "instead assess whether the facts [Plaintiff] has pleaded provide 'at least minimal support for the proposition that [his] employer was motivated by discriminatory intent.'" *Williams v. Classic Security*, No. 18-cv-1691, 2019 WL 4511953, at *5, 2019 U.S. Dist. LEXIS 160217, at *10–11 (S.D.N.Y. Sept. 19, 2019) (quoting *Littlejohn*, 795 F.3d at 311) (dismissing the plaintiff's racial discrimination claims where complaint did not include "facts sufficient to support the inference that racial discrimination was a motivating factor behind [his] termination"); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). Accordingly, Defendants' motion to dismiss Plaintiff's

discrimination claim is granted.[10]

### B.    Retaliation

For a Title VII retaliation claim to survive a motion to dismiss, "the plaintiff must

plausibly allege that: (1) defendants discriminated—or took an adverse employment action—

against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at

90. Generally, "an adverse employment action is any action that 'could well dissuade a

reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). To determine "whether

conduct amounts to an adverse employment action, the alleged acts of retaliation need to be

considered both separately and in the aggregate, as even minor acts of retaliation can be

sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines,* 593 F.3d 159, 165 (2d

Cir. 2010).

Plaintiff alleges that he complained of racial discrimination by Ridler, that there was "a

2017 [DOS] Affirmative Action Officer investigation [that] found that discriminatory acts did

occur," and that he participated in Ridler's arbitration on May 23, 2017. (Dkt. No. 18, at 6–7).

Plaintiff has not alleged any facts regarding this arbitration, and there is therefore no basis for

inferring that his participation in it was protected activity. *See Mira v. Argus Media*, No. 15-cv-

9990, 2017 WL 1184302, at *8, 2017 U.S. Dist. LEXIS 46691, at *25 (explaining that the court

"is not required to draw dubious inferences that are not supported by the facts" on a motion to

---

[10] To the extent Plaintiff intends to advance a hostile work environment claim under Title VII, (Dkt. No. 18, at 8), it fails for the same reason. *See Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 516 (E.D.N.Y. 2019) (dismissing hostile work environment claim, explaining that the plaintiff "must make some non-conclusory allegation that suggests that the conduct that is the basis of the hostile work environment was as a result of her race or skin color").

dismiss); *see also Salahuddin v. New York City Dep't of Educ.*, No. 15-cv-6712, 2017 WL 3724287, at *4, 2017 U.S. Dist. LEXIS 138065, at *10 (S.D.N.Y. Aug. 28, 2017) ("Plaintiff's short statement at the end of the Letter, stating that '[t]he protected activities were the race based issues raised at I.S. 52 & the union election at Choir,' appears to be a 'threadbare recital of the elements of a cause of action, supported by [a] mere conclusory statement.'" (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

The Court also notes, that to plead causation, the plaintiff must plausibly allege that the retaliation was the "but-for" cause of the employer's adverse action, i.e., that "the adverse action would not have occurred in the absence of the retaliatory motive." *Vega*, 801 F.3d at 90–91 (quoting *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)). Causation can be demonstrated either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks*, 593 F.3d at 170 (quoting *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Here, Plaintiff has not alleged any facts supporting an inference that Defendants had a retaliatory motivation.[11]

Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim is granted.

---

[11] To the extent Plaintiff's participation in Ridler's May 23, 2017 arbitration constitutes protected activity, the Court would have to consider whether the denial of Plaintiff's promotion to Deputy Secretary of State on August 10, 2017, has sufficient temporal proximity to allow for an inference of causation. *See Mira v. Argus Media*, No. 15-cv-9990, 2017 WL 1184302, at *8, 2017 U.S. Dist. LEXIS 46691, at *26 (concluding that "the several-month interlude between the protected activity (sometime before January 2013) and the earliest alleged instance of surveillance (spring of 2013) 'is too long for a causal inference to be appropriate.'" (internal citations omitted) (quoting *Cunningham v. Consol. Edison Inc.*, No. 03-cv-3522, 2006 WL 842914, at *20, 2006 U.S. Dist. LEXIS 22482, at *59 (E.D.N.Y. Mar. 28, 2006))); *Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) ("The time lapses between Brown's protected activities and the alleged retaliatory acts—ranging from two months to several years—were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations." (collecting cases)).

### C.    Individual Liability under Title VII

Defendants move to dismiss Plaintiff's Title VII claims against Santiago because "it is well settled that individuals are not subject to suit under Title VII." (Dkt. No. 16, at 5). The Court agrees. Individuals are not subject to liability under Title VII. *See Sassaman v. Gamache*, 566 F.3d 307, 315–16 (2d Cir. 2009) (dismissing Title VII complaint with respect to the plaintiff's former supervisor because "individuals are not subject to liability under Title VII"). Therefore, the Court grants Defendants' motion to dismiss Plaintiff's Complaint with respect to Santiago.

## V.    AMENDING THE COMPLAINT

In recognition of Plaintiff's status as a pro se litigant and because it may be possible for Plaintiff to assert cognizable claims with better pleading, leave to file an amended complaint within thirty (30) days of the date of this Order is granted. In any amended complaint, Plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. With respect to any Title VII claim for racial discrimination, Plaintiff must identify his race and allege specific facts from which it could be plausibly inferred that he was discriminated based on his race. Any such amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)). If Plaintiff fails to file an amended complaint within thirty days, this action will be dismissed.

## VI.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Title VII claims against Santiago are **DISMISSED**; and it is further

**ORDERED** that Plaintiff's Title VII claims against Defendant New York Department of State are **DISMISSED without prejudice** to repleading within thirty (30) days of the date of this order; and it is further

**ORDERED** that Plaintiff is **GRANTED** leave to file an amended complaint within thirty (30) days of the date of this Order; and it is further

**ORDERED** that if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, this case will be closed; and it is further

**ORDERED** that the Clerk of the Court is directed to serve this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 28, 2020
      Syracuse, New York

Brenda K. Sannes
U.S. District Judge

14