UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES A. REPPERT,

                                    Plaintiff,                      1:19-cv-01518 (BKS/CFH)

v.

NEW YORK STATE DEPARTMENT OF STATE,

                                    Defendant.
_____

**Appearances:**

*Plaintiff pro se:*
James A. Reppert
Albany, NY 12203

*For Defendant:*
Letitia James
New York State Attorney General
Andrew W. Koster
Adrienne J. Kerwin
Assistant Attorneys General, Of Counsel
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Plaintiff pro se James Reppert brings this action against his employer, New York Department of State ("DOS"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), *as amended*, 42 U.S.C. §§ 2000e *et seq.* (Dkt. No. 22). Following Plaintiff's filing of a Complaint and Amended Complaint and Defendant's filing of two dismissal motions, two claims remain: (1) retaliation based on failure to promote in September 2017, and (2) retaliation based on failure to promote in August 2018. *Reppert v. N.Y. State Dep't of State*, No. 19-cv-1518, 2021 WL

3165210, at *11–12, 2021 U.S. Dist. LEXIS 138357, at *28–32 (N.D.N.Y. July 26, 2021). Presently before the Court is Defendant's motion under Federal Rule of Civil Procedure 12(c) to dismiss the September 2017 failure to promote claim as time-barred and the August 2018 failure to promote claim for failure to exhaust administrative remedies. (Dkt. No. 45).[1] Plaintiff opposes Defendant's motion. (Dkt. Nos. 49, 59).[2] For the following reasons, Defendant's motion is granted in part and denied in part.

## II.     BACKGROUND[3]

The Court assumes the parties' familiarity with the facts and procedural history of this case. The Court sets forth additional facts as necessary to the analysis.

---

[1] Defendant previously challenged the timeliness of Plaintiff's claims but as Defendant relied on documents outside the Amended Complaint, the Court denied the motion. *Reppert*, 2021 WL 3165210, at *12–13, 2021 U.S. Dist. LEXIS 138357, at *32–35. Defendant has since filed its Answer, (Dkt. No. 41), to which Defendant attached Plaintiff's EEOC Charge of Discrimination (the "Charge"), (Dkt. No. 41-1), and Plaintiff likewise attached the Charge to his opposition to the present motion, (Dkt. No. 49-2, at 73–74).

[2] The Court construes Plaintiff's letter request, (Dkt. No. 59), to file additional information regarding his filing of the EEOC Charge of Discrimination as a request to file a sur-reply and grants that request.

[3] The facts are drawn from (1) the Amended Complaint, (2) Plaintiff's opposition to Defendant's motion, to the extent the submission is "consistent with the allegations in the . . . complaint," *see Crum v. Dodrill*, 562 F. Supp. 2d 366, 373–74 & n.13 (N.D.N.Y. 2008); *see also Santana v. City of N.Y.*, No. 15-cv-6715, 2018 WL 1633563, at *4, 2018 U.S. Dist. LEXIS 53865, at *9–11 (S.D.N.Y. Mar. 29, 2018) (considering new factual allegations in pro se plaintiff's opposition to a 12(c) motion to dismiss), (3) the Answer, and (4) Plaintiff's Charge of Discrimination, which is attached as an exhibit to the Answer, *see Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (explaining that a pleading "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002))); *see also Murtha v. N.Y. State Gaming Comm'n*, No. 17-cv-10040, 2019 WL 4450687, at *15, 2019 U.S. Dist. LEXIS 159783, at *43–44 (S.D.N.Y. Sept. 17, 2019) ("[A] Court may take judicial notice of EEOC charges . . . because they are public records." (citing *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 204–05 (E.D.N.Y. 2006))); *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 591 n.1 (E.D.N.Y. 2013) ("Although plaintiff's EEOC Charge was submitted by the defendant, the court takes judicial notice of plaintiff's EEOC charge on a motion to dismiss." (cleaned up)). The Court draws all reasonable inferences in Plaintiff's favor for the present motion. *Lively v. Wafra Inv. Advisory Grp.*, 6 F.4th 293, 305–06 (2d Cir. 2021) ("[W]here a court does draw from . . . extrinsic material, it must construe all reasonable inferences in the non-movant's favor.") (citations omitted). The Court assumes the truth of, and draws reasonable inferences from, Plaintiff's well-pleaded factual allegations, as the non-moving party. *See id.* at 304–05 (explaining that "[i]n deciding a Rule 12(c) motion, we employ the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)" (citation omitted)).

A.      **Failure to Promote Claims**

The Court previously summarized the facts Plaintiff alleges in support of his 2017 failure to promote claim as follows:

> On June 20, 2017, Plaintiff met with "officials in the Department of State's Executive Office," including Brendan Fitzgerald, "to discuss his qualifications and how he could be of service to the Department." (Dkt. No. 22, at 3). Plaintiff indicated that he was interested in the positions of Deputy Secretary of State, program manager, Director of [the Office of Planning, Development and Community Infrastructure ("OPD&CI")], or Planning Division program director. (*Id.* at 7; Dkt. No. 22-1, at 9). The Deputy Secretary of State position was announced August 10, 2017, and in September 2017, the DOS named Kisha Santiago to the position. (Dkt. No. 22, at 3, 7). As Plaintiff continued to seek promotional opportunities, including the position of [Local Waterfront Revitalization] Program Manager, Fitzgerald advised Plaintiff to discuss promotional opportunities with Santiago; Plaintiff was unable to schedule a meeting with Santiago until December 2017. (*Id.* at 7; Dkt. No. 22-1, at 14, 17).
>
> During the December 2017 meeting, Santiago was "antagonistic" toward Plaintiff, often questioning the meanings of Plaintiff's statements. (Dkt. No. 22, at 7). For example, Santiago pressed Plaintiff "for further meanings when" he stated that he was Santiago's "senior planner." (*Id.* at 7–8). Plaintiff "felt harassed" by Santiago's "aggressive tact as the meeting continued with a barrage of 'What does that mean' questioning." (*Id.* at 8). Further, Plaintiff, who had brought his resume to the meeting, "did not get a chance to discuss" either his credentials or the Program Manager position he was seeking. (*Id.*). Plaintiff described the December 2017 meeting with Santiago as "hostile." (Dkt. No. 22-1, at 17).

*Reppert*, 2021 WL 3165210, at *3, 2021 U.S. Dist. LEXIS 138357, at *7–8.

The Court previously summarized the facts alleged in support of Plaintiff's 2018 failure to promote claim as follows:

> On August 14, 2018, there was a celebratory "coffee and sweets event" attended by "all available" OPD&CI staff, including Plaintiff. (Dkt. No. 22, at 14). At the event, it was announced that Stephanie Wojtowicz was being promoted to a [Coastal Resource Specialist ("CRS")] 3 position. (*Id.* at 4, 14). Plaintiff, Wojtowicz, and two others had applied for this promotion and been interviewed

3

>in June 2018 by Santiago and Crowell. (Dkt. No. 22-1, at 165). Plaintiff learned that he had not been selected for the promotion at the staff event, when Wojtowicz's selection was announced. (Dkt. No. 22, at 14). Plaintiff was shocked, humiliated, and disappointed by the public announcement of Wojtowicz's promotion and the implicit announcement that he had been rejected for the position. (*Id.*). Plaintiff asserts there were a number of instances during the hiring process for this position that suggested Santiago and Crowell had "predetermined" that Wojtowicz would receive the promotion, and Plaintiff attributes this to "ongoing discriminatory attitudes." (*Id.* at 4).

*Id.*, 2021 WL 3165210, at *4, 2021 U.S. Dist. LEXIS 138357, at *8–9.

### B. Filing of EEOC Charge

Plaintiff's allegations concerning his interactions with the EEOC during the relevant time period are as follows.[4] On October 29, 2018, Plaintiff received an email from the EEOC "regarding email verification for website access." (Dkt. No. 59, at 4). On October 31, 2018, Plaintiff received an email from the EEOC "on employment discrimination by DOS and scheduling intake." (*Id.* at 4, 21). The October 31 email advised Plaintiff to schedule an intake interview and to "provide additional information about your inquiry," but cautioned that "ANSWERING THESE QUESTIONS IS NOT THE SAME AS FILING A CHARGE OF DISCRIMINATION." (*Id*. at 21). At some point between October 31 and December 22, 2018, Plaintiff "used the EEOC online public portal to initiate an 'inquiry' and set up an 'interview' per the online steps." (Dkt. No. 49, at 10). An intake appointment was scheduled for January 4, 2019. (Dkt. No. 49-2, at 61). On December 22, 2018, the United States federal government shut

---

[4] There is a second Charge in the record that pre-dates the Charge at issue here. This earlier Charge is stamped "Received" by the EEOC on May 8, 2017, and alleges race discrimination and retaliation. (Dkt. No. 49-2, at 25). On September 20, 2017, the EEOC issued a right to sue letter in connection with the May 8, 2017 Charge. (*Id.*at 37). Even if the May 8, 2017 Charge was timely with respect to the 2017 failure to promote claim, given that Plaintiff filed the Original Complaint in this case on December 9, 2019, nearly two years after the 90-day time period for filing a Title VII action expired, the 2017 failure to promote claim would still be time-barred. *See* 42 U.S.C. § 2000e-5(f)(1) (providing that a plaintiff must commence civil action within "ninety days after the giving of" right to sue letter).

4

down. (*Id.*; Dkt. No. 49, at 10). On December 26, 2018, EEOC Investigator Jean Mulligan emailed Plaintiff that "[d]ue to a lapse in appropriations, the U.S. EEOC is currently closed" and that the January 4, 2019 intake appointment for Plaintiff's "[i]nquiry" would only proceed if the "government is re-opened at that time." (Dkt. No. 49-2, at 61). Mulligan stated that if the government was still closed on January 4, she would contact him to reschedule the appointment "when [the government] re-open[ed]." (*Id.*; Dkt. No. 49, at 10). The government was shut down until January 25, 2019, and Plaintiff's "intake appointment . . . did not occur." (Dkt. No. 49, at 10; Dkt. No. 49-2, at 62).

In addition, because "[o]nline forms were not available during the shutdown period," on or about January 4, 2019, Plaintiff filed "a complaint" with the EEOC "by letter method."[5] (Dkt. No. 49, at 10). In the letter, Plaintiff alleged that he was subjected to discrimination based on race and color as well as "retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, and opposing job discrimination." (Dkt. No. 49-2, at 62). Plaintiff alleged that he was "passed up [sic] for promotional opportunities" because of this discrimination and retaliation. (*Id.*). Plaintiff requested that the "EEOC . . . take remedial action." (*Id.*).[6] Plaintiff further alleges that the EEOC recorded the "official filing date for this case" as January 10, 2019. (Dkt. No. 49, at 10).

On February 22, 2019, Plaintiff signed and notarized a Charge of Discrimination (the "Charge"). (Dkt. No. 41-1, at 2; Dkt. No. 49-2, at 73–74). It was stamped "received" by the EEOC on February 26, 2019. (Dkt. No. 41-1, at 2). As relevant here, in the Charge, Plaintiff

---

[5] Plaintiff alleges that the EEOC "allowed for filing by letter" during the government shutdown and did not require "receipt of a notarized form." (Dkt. No. 49, at 10).

[6] Plaintiff indicated in the letter that there were "attachments" which included "specific actions and dates," but these attachments do not appear to be before the Court.

5

alleged: "Since 2017, I have applied for promotional positions and been denied, despite my qualifications and experience." (*Id.* at 3). "[I]n August 2017, I applied for an open CRS III position . . . I was denied this promotional position in favor of a White (Caucasian) individual, who was less qualified and less experienced in the program area." (*Id.*). He further wrote that, in August 2018, he made an "internal discrimination complaint," in which he alleged that he had been "denied promotions . . . in retaliation for [his] past opposition to discriminatory practices." (*Id.*).

Plaintiff alleges that he "amended" his Charge "with supplementary information mailed separately," some of which concerned his failure to promote claim, on July 10, 2019 and "by letter[s]" on July 22, 2019[7] and July 29, 2019. (Dkt. No. 49, at 8, 12–13). In a July 29, 2019, letter to EEO Investigator Mulligan, Plaintiff wrote that on June 28, 2019, he sent the DOS a Freedom of Information Law ("FOIL") request for documents "used in deciding promotions that led to the appointment of Stephanie Wojtowicz from CRS2 to CRS3 on 8/9/2018." (Dkt. No. 22-1, at 317; *see also id.* at 20).

On September 6, 2019, the EEOC issued a dismissal and right to sue letter, explaining that based on its investigation it was "unable to conclude that the information obtained establishes violation of the statutes." (Dkt. No. 49-2, at 106). Plaintiff filed the present action on December 9, 2019. (Dkt. No. 1).

---

[7] Although Plaintiff alleges that he amended his Charge by letter on July 10 and July *2*, 2019, he cites to an exhibit attached to his Amended Complaint containing a letter dated July 29, 2019, which refers to supplementary information he provided to the EEOC on July 10 and *22*, 2019, (Dkt. No. 22-1, at 316); thus, July 2 appears to be a typographical error, and the Court uses the July 22 date provided in the attached July 29 letter. Neither the July 10 nor the July 22 letter appears to be before the Court.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Patel v. Contemporary Classics*, 259 F.3d 123, 126 (2d Cir. 2001)) (cleaned up). "For both motions, the Court must accept the allegations contained in the pleadings as true and draw all inferences in the non-movant's favor." *Neopharm Ltd. v. Wyeth-Ayerst Int'l LLC*, 170 F. Supp. 3d 612, 614 (S.D.N.Y. 2016) (citing *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010)). A complaint "must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). For both motions, "the Court must determine whether 'the moving party is entitled to judgment as a matter of law.'" *Seabrook v. City of New York*, 509 F. Supp. 2d 393, 399 (S.D.N.Y. 2007) (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995)).

A complaint that has been filed pro se "must be construed liberally with 'special solitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509,

515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

IV.     **DISCUSSION**

    A.     **Remaining Claims**

As noted, the Court previously determined that two claims remain in this case: a September 2017 failure to promote claim and an August 2018 failure to promote claim. However, in his opposition to Defendant's motion to dismiss those remaining claims, Plaintiff appears to contend that the allegations concerning his December 12, 2017 meeting with Santiago, where he "did not get a chance to discuss" his credentials, the Program Manager position he was seeking, or his "potential for promotion to recently vacated senior management positions," raise a third failure to promote claim. (Dkt. No. 22, at 7–8; *see* Dkt. No. 49, at 11 (arguing that December 12, 2017 "provides a date certain when DOS met to begin a dialogue on Plaintiff's potential for promotion to recently vacated senior management positions, though the meeting did not advance discussion and no . . . response was provided by Kisha Santiago at that meeting or subsequently")).[8] Thus, the Court must determine, as a preliminary matter, whether Plaintiff has plausibly alleged a third failure to promote claim.

Although Plaintiff refers to "Program Manager" and "senior management" positions, he does not allege that he applied for and was denied any position during this time period. *See*

---

[8] Although Plaintiff frames this argument as a request for equitable tolling, (*see* Dkt. No. 49, at 11 (requesting that "the Court consider tolling the Statute of Limitations to a time after December 12, 2017, as DOS delayed consideration of Plaintiff's attempts to discuss promotion to an upper management position and did not bring closure to Plaintiff's request for consideration")), the allegations underlying this argument concern Plaintiff's efforts to seek promotion, and are irrelevant to the factors governing equitable tolling, which, as relevant here, require a showing that a litigant was "pursuing his rights diligently" but "some extraordinary circumstance stood in his way" to filing a charge with the EEOC. *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011). Thus, while such allegations would not support an equitable tolling claim, in view of Plaintiff's pro se status, the Court has nevertheless considered whether they raise a third failure to promote claim. The Court has also considered whether they would support Plaintiff's failure to promote claim as a continuing violation. *See supra* Section IV.B.2.

*Taylor v. City of New York*, 207 F. Supp. 3d 293, 306 (S.D.N.Y. 2016) (dismissing failure-to-promote claim on a motion to dismiss where the plaintiff had not alleged that she actually applied to the position, merely that she made numerous inquiries, because expressing a "general interest in promotion . . . is not enough to excuse her from the specific-application requirement" (first citing *Tulino v. City of New York*, No. 15-cv-7106, 2016 WL 2967847, at *6, 2016 U.S. Dist. LEXIS 66012, at *19 (S.D.N.Y. May 19, 2016), and then citing *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004))). And to the extent Plaintiff alleges that Santiago's actions during the meeting rendered any attempt to apply for promotions futile, *see, e.g.*, *Hunt v. Consol. Edison Co. of N.Y., Inc.*, No. 18-cv-7262, 2021 WL 3492716, at *6, 2021 U.S. Dist. LEXIS 149194, at *16 (E.D.N.Y. Aug. 9, 2021) (explaining that "a plaintiff's failure to apply for a position is not a bar to relief when an employer's discriminatory practices deter application or make application a futile endeavor" (quoting *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993))), his allegations that Santiago's manner during the meeting was "hostile" and "aggressive," (Dkt. No. 22, at 7–8; Dkt. No. 22-1, at 17), lack sufficient factual detail to render a claim of futility plausible. Accordingly, the Court concludes, as it did previously, that two claims remain in this case—the September 2017 and August 2018 retaliatory failure to promote claims—and turns to Defendant's arguments regarding these claims.

### B.     2017 Failure to Promote

Defendant argues that Plaintiff's September 2017 failure to promote claim must be dismissed as time-barred because Plaintiff failed to file a formal charge with the EEOC within 300 days of the allegedly retaliatory act. (Dkt. No. 45-1, at 8–9). Plaintiff responds that his EEOC complaint was timely, and that equitable tolling is applicable. (Dkt. No. 49, at 9–11).

### 1. 300-Day Filing Requirement

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)); *see also* 42 U.S.C. §§ 2000e–5(e) and (f). "Title VII requires that individuals aggrieved by acts of discrimination [in states like New York] file a charge with the EEOC within . . . 300 days 'after the alleged unlawful employment practice occurred.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000(e)–5(e)(1)). Failing to timely file a charge "acts as a bar to a plaintiff's ability to bring the action." *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 576 (E.D.N.Y. 2011) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

"Statute of limitations defenses are affirmative defenses, which normally cannot be decided on a motion to dismiss." *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009). Additionally, "filing a timely charge of discrimination with the EEOC is . . . a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes*, 455 U.S. at 393. Dismissal may be appropriate, however, "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.'" *In re S. African Apartheid Litig.*, 617 F. Supp. 2d at 287 (emphasis omitted).

As Plaintiff does not allege a specific date for the September 2017 denial of the Deputy Secretary of State position, the Court utilizes the last day in September 2017, September 30, as the operative date because it affords Plaintiff more time for filing an EEOC charge than would an earlier date in September 2017. Thus, Plaintiff was required to file an EEOC Charge within 300

days of those denials of promotion: by July 27, 2018 for the September 30, 2017 failure to promote claim to be timely.

The parties disagree regarding the date the EEOC Charge was filed. Defendant relies on the date Plaintiff signed it: February 22, 2019. (Dkt. No. 41-1, at 3; Dkt. No. 45-1, at 4). Plaintiff responds that "it is incorrect to assume that the date of filing for statute of limitations purposes is February 22, 2019" because "[t]here were several complaint efforts that predated and led to [the] submission of" the EEOC Charge. (Dkt. No. 49, at 9). The efforts Plaintiff references are: (1) the October 29 and 31, 2018, emails from the EEOC regarding "email verification for website access" and "email received on employment discrimination by DOS and scheduling intake"; (2) Plaintiff's use of the EEOC online public portal to initiate an "inquiry" and setup an "interview" prior to December 22, 2018, the date the government shutdown began; (3) the December 26, 2018 EEOC email from Investigator Mulligan advising that Plaintiff's January 4, 2019 intake appointment would be rescheduled if the government remained closed; (4) Plaintiff's January 4, 2019 "fil[ing] by letter method" with the EEOC; and (5) January 10, the "official filing date" recorded by the EEOC. (*Id.* at 9–11; Dkt. No. 59, at 4, 20, 21). Therefore, "Plaintiff proposes that a date prior to December 21, 2018 . . . be used as the filing date for the purposes" of the statute of limitations. (Dkt. No. 49, at 10).

While Title VII does not define what constitutes "a 'charge' to initiate an EEOC investigation and demarcates the running of the limitations period[,] EEOC regulations provide that filing a written form identifying the parties, and 'generally' describing the alleged discriminatory acts constitutes a Title VII charge." *Black v. Buffalo Meat Serv., Inc.*, No. 15-cv-49, 2021 WL 2043006, at *10, 2021 U.S. Dist. LEXIS 96748, at *26 (W.D.N.Y. May 21, 2021) (citations omitted), *appeal filed* No. 21-1468 (2d Cir. 2021); *see also* 29 C.F.R. §§ 1601.9,

11

1601.12(b). Submissions to the EEOC constitute a "'charge' . . . only when the writing demonstrates that an individual seeks to activate the administrative investigatory and conciliatory process" of the agency. *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 567 (2d Cir. 2006). "[N]otice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate [Title VII's] machinery." *Id.* at 566 (citation omitted).

The Court, however, need not determine whether Plaintiff's interactions with the EEOC in October 2018, or in December 2018, constitute a charge of discrimination. Even assuming they do, and further assuming such charge was filed on or about October 29, 2018, the earliest date Plaintiff asserts he interacted with the EEOC, Plaintiff's 2017 failure to promote claims would still be untimely because a charge for the September 30, 2017 failure to promote claim must have been filed by July 27, 2018. Thus, even assuming the charge was filed on October 29, 2018, the earliest of Plaintiff's interactions with the EEOC, such charge was filed 394 days after the September 30, 2017 failure to promote and was, therefore, untimely filed. *See Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (finding that the plaintiff "did not comply with the 300-day statutory period for filing" where "[t]he record reveal[ed] that plaintiff's formal EEOC complaint was not filed until May 19, 2000—357 days after plaintiff received the 'intent to terminate notification' . . . on May 28, 1999").[9]

---

[9] Plaintiff also asserts that his internal DOS complaints, including his August 30, 2018 letter, and October 10 and 24, 2018 Discrimination and Sexual Harassment Complaint forms, constituted "administrative charges of discrimination" to "other local discrimination agencies." (Dkt. No. 49, at 11). Title VII allows the filing of charges with the EEOC or "a State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e-5(e)(1). However, the New York State Division of Human Rights and the New York City Commission on Human Rights are the only designated fair employment practice agencies in New York. *See* 29 C.F.R. § 1601.74 (listing designated agencies). Thus, Plaintiff's internal complaints are insufficient to satisfy his filing obligation and provide no basis for finding his 2017 failure to promote claim timely.

**2.     Continuing Violation**

To the extent Plaintiff argues that Defendant's failure to promote him in September 2017 was a continuing violation, (Dkt. No. 49, at 11 ("December 12, 2017 provides a date certain when [Defendant] met to begin a dialogue on Plaintiff's potential for promotion . . . and Plaintiff continued to pursue promotion.")), his argument is unavailing as there are no allegations that would allow a conclusion that the failure to promote was anything other than a discrete act of retaliation. "To determine whether a claim was timely filed with the EEOC, the incidents of employment discrimination . . . 'must be categorized as either discrete acts or continuing violations.'" *Castiblanco v. Am. Airlines, Inc.*, No. 17-cv-5639, 2019 WL 4751880, at *7, 2019 U.S. Dist. LEXIS 167876, at *18 (E.D.N.Y. Sept. 29, 2019) (citation omitted); *see also Davenport v. City of White Plains*, No. 12-cv-8426, 2015 WL 5459888, at *5, 2015 U.S. Dist. LEXIS 127751, at *13 (S.D.N.Y. July 8, 2015) (citation omitted) (same).

"Discrete acts such as termination, *failure to promote*, denial of transfer, or refusal to hire are easy to identify." *Vega*, 801 F.3d at 79 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 563 U.S. 101, 114 (2002)) (emphasis added). Discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 563 U.S. at 113. Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*. It is well-settled that "[a]n employer's failure to promote is by its very nature a discrete act." *Rowe v. N.Y. State Dep't of Tax'n & Fin.*, 786 F. App'x 302, 304 (2d Cir. 2019) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012)).

Here, even read liberally, Plaintiff's submissions allege discrete, retaliatory acts in connection with the Defendant's denial of promotions. Accordingly, the Court finds no basis for the application of the continuing violation doctrine. *See, e.g., Jackson v. N.Y. State Office of Mental Health*, No. 11-cv-7832, 2012 WL 3457961, at *1, *6, 2012 U.S. Dist. LEXIS 114531, at

*2, *18–19 (S.D.N.Y. Aug. 13, 2012) (finding that the defendant's failure to promote the plaintiff on April 8, 2008 was a discrete act that was time barred because it occurred before October 1, 2010, the date which established the 300-day limitations period), *report and recommendation adopted* 2012 WL 5862741, 2012 U.S. Dist. LEXIS 165876 (S.D.N.Y. Nov. 15, 2012).

### 3.   Equitable Tolling

Plaintiff argues that equitable tolling should be applied to account for the government shutdown, which lasted from December 22, 2018 to January 25, 2019. (*See* Dkt. No. 49, at 10 (arguing that "[a]ny day later than January 25, 2019 should include a 35-day toll of the statute for the period of the government shutdown"); Dkt. No. 49-2, at 61–62).[10] "Equitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising [their] rights." *Edo v. Anitka Pizzeria Astoria, Inc.*, 852 F. App'x 618, 619 (2d Cir. 2021) (summary order) (citation omitted). A plaintiff seeking equitable tolling must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *A.Q.C. ex rel. Castillo*, 656 F.3d at 144. Here, since the Court assumes, for the purposes of the present motion, that Plaintiff filed his EEOC Charge on October 29, 2018, prior to the EEOC's closure during the government shutdown, there is no basis for tolling.

Accordingly, as Plaintiff's submissions facially show noncompliance with the 300-day filing deadline, Defendant's motion to dismiss Plaintiff's September 2017 failure to promote claims is granted.

---

[10] Plaintiff does not contend, nor do his submissions suggest, that waiver or estoppel would excuse the exhaustion of administrative remedies.

      **C.**      **2018 Failure to Promote**

            **1.**      **Failure to Exhaust Administrative Remedies**

Defendant argues that Plaintiff's retaliation claim based on the alleged failure to promote in August 2018 should be dismissed for failure to exhaust administrative remedies, because the EEOC Charge only references a failure to promote in August 2017. (Dkt. No. 45-1, at 10–11). Plaintiff responds that the claim should not be dismissed because Plaintiff's reference to a failure to promote in August 2017 in the Charge was a "typographic error." (Dkt. No. 49, at 10). Plaintiff notes that he "is unaware of any job postings for August 2017," and that this typographical error is "easily corrected by examining the context" of his communications with the EEOC. (*Id.* at 10, 12).

"It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015); *see also* 42 U.S.C. §§ 2000(e)–5(e) and (f). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Fowlkes*, 790 F.3d at 384 (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)) (internal quotation marks omitted). "The administrative exhaustion requirement applies to pro se and counseled plaintiffs alike." *Marinacci v. U.S. Postal Serv.*, 403 F. Supp. 3d 116, 124 (E.D.N.Y. 2017) (citing *Fowlkes*, 790 F.3d at 384).

"[T]he burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Hardaway*, 879 F.3d at 491. Since "defendants bear the burden of showing non-exhaustion, the 'issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss.'" *Novick v. Vill. of Wappingers Falls*, 376 F. Supp. 3d 318, 336 (S.D.N.Y. 2019) (quoting *Nicholson v. Murphy*, No. 02-cv-1815, 2003 WL 22909876, at *6, 2003 U.S. Dist. LEXIS 22165, at *15 (D. Conn. June 16, 2003)). However, "[i]f

15

nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss . . . for failure to exhaust should be granted." *Bell v. SL Green Realty Corp.*, No. 19-cv-8153, 2021 WL 516575, at *3, 2021 U.S. Dist. LEXIS 26570, at *8 (S.D.N.Y. Feb. 11, 2021) (quoting *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016)) (internal quotation marks omitted).

  Here, nonexhaustion is not clear from the face of the Amended Complaint or Plaintiff's submissions. While Plaintiff wrote in the formal EEOC Charge that he was denied the CRS 3 position in August 2017, he also wrote that he made an "internal discrimination complaint" in August 2018, "alleging that [he had] been denied promotions because of race/color and in retaliation for [his] past opposition to discriminatory practices." (Dkt. No. 41-1, at 3).[11] The EEOC received the Charge on February 26, 2019, (*id.* at 2), and the EEOC mailed the right to sue letter to Plaintiff on September 6, 2019, (Dkt. No. 49-2, at 106). Between those dates, on April 25, 2019, the DOS responded to the allegations contained in Plaintiff's Charge, and in response to Plaintiff's allegation that he was denied a promotion in August 2017, the DOS wrote that on "8/6/18," "Stephanie Wojtowicz [was] promoted to the CRS 3 over [Plaintiff] and other candidates." (*Id.* at 79). Underneath this response, the DOS wrote: "[Plaintiff's] *current allegation of promotion may refer to this promotion decision*." (*Id.*). In a letter to EEOC Investigator Mulligan dated July 29, 2019—before the EEOC mailed the right to sue letter—Plaintiff wrote that he had provided the EEOC with supplemental information, and referenced a failure to promote to CRS 3 in August 2018, not 2017. (Dkt. No. 22-1, at 316; *see id.* at 321 (stating that Plaintiff was "bypassed" for the CRS 3 promotion on "8/9/2018")).

---

[11] In his August 30, 2018 letter to the Secretary of State and Counsel to the Governor, Plaintiff wrote that he was "more recently bypassed . . . for a promotion" by Santiago and Crowell. (Dkt. No. 22-1, at 17). It is not clear whether this letter is the "internal discrimination complaint" to which Plaintiff refers in the Charge.

Drawing all reasonable inferences in Plaintiff's favor from the EEOC Charge and materials exchanged with the EEOC during the investigation referring to an August 2018 denial of promotion, it is not clear that Plaintiff failed to exhaust his administrative remedies with respect to the August 2018 failure to promote claim. *See Fowlkes*, 790 F.3d at 384; *see also Novick,* 376 F. Supp. 3d at 336 (finding that it was "not clear from the face of the Complaint that [the] [p]laintiff failed to exhaust his administrative remedies under the ADA" where it was unclear whether the scope of the EEOC and New York State Division of Human Rights investigations encompassed "all of [the] [p]laintiff's claims"); *see also Broich v. Incorp. Vill. of Southampton*, 650 F. Supp. 2d 234, 246 (E.D.N.Y. 2009) (finding that, since the court could not "ascertain[] on [the] motion whether plaintiff's later charges gave the EEOC adequate notice to investigate his earlier claims," and "[s]ince defendants bear the burden of establishing plaintiff's failure to exhaust his administrative remedies," dismissal was inappropriate).

Therefore, Defendant's motion to dismiss Plaintiff's 2018 failure to promote claim based on failure to exhaust administrative remedies is denied.

    **2.    Failure to State a Claim**

Defendant argues that Plaintiff's retaliation claim based on the alleged 2018 failure to promote should be dismissed for failure to state a claim because a memorandum dated August 6, 2018, which was attached to the Amended Complaint, "clearly reflects that [P]laintiff was not hired for the position because of his [interview] score, rather than for any retaliatory motive." (Dkt. No. 45-1, at 12 (citing Dkt. No. 22-1, at 165)). Defendant appears to challenge the causal connection between Plaintiff's purported protected activity and Defendant's alleged adverse action, suggesting that, because Plaintiff would not have been promoted regardless of his engagement in protected activity, the Court cannot find causation. Defendant previously challenged causation in a Rule 12(b)(6) motion to dismiss, and the Court denied that motion,

finding that Plaintiff alleged facts that allowed for "a plausible inference of causation." *Reppert*, 2021 WL 3165210, at *12, 2021 U.S. Dist. LEXIS 138357, at *31. The Local Rules require a motion for reconsideration be filed within "FOURTEEN DAYS after the entry of the challenged . . . order." L.R. 60.1 (formerly L.R. 7.1(g)). The Court issued its prior decision on July 26, 2021, (Dkt. No. 35), and Defendant filed the present motion on October 27, 2021, (Dkt. No. 45). Accordingly, Defendant's motion is untimely.

In addition, Defendant's argument regarding Plaintiff's low score appears to be an assertion that it had a legitimate, non-retaliatory reason for not promoting Plaintiff—an element of the *McDonnell Douglas* burden-shifting framework. (*See* Dkt. No. 45-1, at 12 (arguing that documents show that "plaintiff was not hired for the position because of his score, rather than for any retaliatory motive")). While Defendant "may at a later stage lay out the reasons for which Plaintiff was not fit for duty in order to proffer a legitimate, non-[retaliatory] basis for [its] actions," *Tyson v. Town of Ramapo*, No. 17-cv-4990, 2019 WL 1331913, at *13, 2019 U.S. Dist. LEXIS 48875, at *34 (S.D.N.Y. Mar. 25, 2019), at the pleading stage, a plaintiff must plausibly allege that "the adverse action would not have occurred in the absence of the retaliatory motive," *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). The cases Defendant cites in its motion are thus inapposite because they all involve different procedural postures. (Dkt. No. 45-1, at 12 (first citing *Pathare v. Klein*, 347 F. App'x 646, 647–48 (2d Cir. 2009) (summary order) (summary judgment); then citing *Levitant v. N.Y.C. Human Res. Admin.*, 914 F. Supp. 2d 281, 306 (E.D.N.Y. 2012) (post-trial motion for judgment as a matter of law); and then citing *Fanelli v. New York*, 200 F. Supp. 3d 363, 373 (E.D.N.Y. 2016) (summary judgment))). As the Court has determined that Plaintiff alleged sufficient facts in the Amended Complaint to support a minimal

plausible inference of causation, Defendant's argument fails. Defendant's motion to dismiss Plaintiff's 2018 failure to promote claim is therefore denied.

## V.      PLAINTIFF'S LETTER MOTIONS

In letters dated February 15, 2022 and April 15, 2022, Plaintiff requests permission to provide documents concerning December 2021 "promotional opportunities in the CRS title series." (Dkt. Nos. 52, 57). Plaintiff's requests are denied. There are no claims or motions concerning December 2021 "promotional opportunities" and discovery is not to be filed with the Court.

## VI.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 45) is **GRANTED** as to Plaintiff's retaliation claim based on the 2017 failure to promote; and it is further

**ORDERED** that Plaintiff's Title VII retaliation claim based on the 2017 failure to promote is **DISMISSED**; and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 45) is otherwise **DENIED**; and it is further

**ORDERED** that Plaintiff's Letter Motion (Dkt. No. 59) to file a sur-reply is **GRANTED** and Plaintiff's Letter Motions (Dkt. Nos. 52, 57) are **DENIED**; and it is further

**ORDERED** that the Clerk of the Court is directed to serve this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

   **IT IS SO ORDERED.**

Dated: June 28, 2022
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge